UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALCIDES MOACYN GOMES-AFONSECA, <br><br> Petitioner, <br><br> v. <br><br> TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; DAVID WESLING, Acting Boston Field Office Director, U.S. Immigration and Customs Enforcement; and ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility, <br><br> Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 26-CV-10215-AK |

**MEMORANDUM AND ORDER ON
PETITIONER'S WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Before the Court is Petitioner Alcides Moacyn Gomes-Afonseca's Writ of Habeas Corpus. [Dkt. 1]. Petitioner alleges he is being unlawfully detained in violation of 8 U.S.C. § 1231 and the Fifth Amendment Due Process Clause. For the reasons below, Petitioner's Petition for a Writ of Habeas Corpus [Dkt. 1] is **GRANTED**.

**I.    BACKGROUND**

Unless otherwise noted, all facts have been sourced from Petitioner's Writ of Habeas Corpus. [Dkt. 1]. Petitioner came to the United States as a child around 1986. Petitioner alleges that he is not a citizen of any state. Respondents allege that Petitioner is a native and citizen of Cabo Verde. [Dkt. 11-1 ¶ 7]. On or about May 2, 1996, Petitioner was convicted of multiple

1

crimes, including armed robbery, assault to rob while armed with a firearm, and assault and battery with a dangerous weapon. [Id. ¶ 8]. Petitioner was sentenced to a minimum of ten years and a maximum of twelve years of incarceration at MCI Cedar Junction. [Id.]

On or about May 5, 1999, an Immigration Judge issued a final order of removal to deport Petitioner to Cabo Verde. On or about April 25, 2005, Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody and detained at Plymouth County Correctional Facility. ICE attempted to effectuate Petitioner's removal to Cabo Verde, but Cabo Verde would not accept Petitioner for removal. After six months in immigration custody, ICE released Petitioner on an order of supervision in or around November 25, 2005.

Since that time, Petitioner has not had any criminal convictions and has complied with his order of supervision. In or around 2016, Petitioner hired a lawyer to attempt to get a travel document from the Republic of Cabo Verde. However, the Republic of Cabo Verde refused because it does not consider Petitioner its citizen.

In November 2025, ICE requested that Petitioner report in person to the Boston ICE Field Office and Petitioner promptly complied on or about November 25, 2025. That same day, ICE detained Petitioner at the Boston ICE Field Office without warning or notice. Approximately three weeks after detaining him, ICE gave Petitioner a notice of revocation of release. There is no allegation that Petitioner has violated his conditions of release. Petitioner remains detained at the Plymouth Correctional Facility.

On or about January 22, 2026, the ICE Boston Field Office submitted a travel document request to ICE Removal and International Operations ("RIO") for review. [Dkt. 11]. That same day, RIO reviewed the travel document request and determined that updated and additional

information was necessary before submission to the Embassy of Cabo Verde. [Id.]. Specifically, RIO required confirmation that Petitioner possesses identification issued by Cabo Verde. [Id.].

Obtaining travel documents from Cabo Verde is complicated. ICE must procure a) DHS Form I-217, Information for Travel Document or Passport, b) a copy of the noncitizen's Notice to Appear (NTA), c) a copy of the Immigration Judge's order or Board of Immigration Appeals decision in the noncitizen's case, d) the noncitizen's fingerprints, and e) either a birth certificate, passport, or national ID of the noncitizen. [Id.]. All travel document requests are routed through the RIO officer for Cabo Verde who then forwards the request to the Embassy of Cabo Verde in Washington, DC for their review. [Id.]. The Embassy then has up to 30 days to confirm the noncitizen's nationality. [Id.]. Upon final confirmation of the noncitizen's nationality, a hard copy of the application is sent to the Consulate of Cabo Verde in Quincy, MA for production of the passport. [Id.]. At that time, the removal itinerary will then be forwarded to the Embassy of Cabo Verde who, upon their review, will instruct the Consulate of Cabo Verde to produce the travel document. [Id.].

## II.    LEGAL STANDARD

Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c). The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)).

### III. DISCUSSION

#### A. Statutory Framework

ICE has the authority to detain and remove noncitizens with final orders of removal pursuant to 8 U.S.C. § 1231. Section 1231(a)(1)(A) directs immigration authorities to remove a noncitizen with a final order of removal within a 90 day "removal period." During this removal period, detention is mandatory. 8 U.S.C. § 1231(a)(2)(A). The removal period may be extended by 90 days when a noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to [their] departure or conspires or acts to prevent [their] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

If the mandatory removal period expires, ICE may either release the noncitizen pursuant to an order of supervision as directed by Section 1231(a)(3) or continue to detain the noncitizen under Section 1231(a)(6). Respondents have not alleged that Petitioner is detained under Section 1231(a)(6).

Section 1231(a)(3) dictates that noncitizens who are not deported within the removal period "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Pursuant to this mandate, ICE has issued regulations contained at 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 setting forth procedures concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal. Section 241.4 provides general grounds for re-detaining noncitizens who are subject to a final order of removal and released under supervision. 8 C.F.R. § 241.4(l). Section 241.13 "establishes special review procedures" for noncitizens who are subject to final orders of removal, detained beyond the removal period, and "provided good reason to believe there is no significant likelihood of removal to the country to which [they were] ordered removed . . . in the reasonably foreseeable

4

future." 8 C.F.R. § 241.13(a).  To re-detain a noncitizen under Section 241.13, ICE is obligated to provide specific facts supporting "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).

Where ICE is attempting to re-detain a noncitizen, this individualized determination must be conducted prior to re-detention. 8 C.F.R. § 241.13(i)(2); Huynh v. Wesling, No. 25-CV-13794-AK, 2026 WL 183467, at *3 (D. Mass. Jan. 23, 2026); see Munagi v. McDonald, 25-13175-NMG, 2025 WL 3688023, at *2 (D. Mass. Dec. 19, 2025) ("[T]he changed circumstances that make [a noncitizen's] removal likely in the foreseeable future must have existed at or before the [order of supervision] revocation; post-hoc justifications are inadequate."); Tran v. Hyde, 25-CV-12546-ADB, 2025 WL 3724853, at *3 (D. Mass. Dec. 24, 2025) (looking at factors for determining reasonably foreseeable release based upon "relevant information that would have been available at the time that [petitioner] was redetained.").  In deciding whether the requisite changed circumstances exist, ICE relies on the factors enumerated in 8 C.F.R. § 241.13(f). Kong, 62 F.4th at 620.  Courts considering a challenge to re-detention must review ICE's determination "in light of" those same factors. Id.  After noncitizens have challenged whether their detention is reasonably foreseeable, courts place the burden on ICE to prove that removal is significantly likely in the reasonably foreseeable future. See Tran v. Hyde, 2025 WL 3724853, at *2 (citing cases).

    **B.**    **Detention Authority Under Section 1231**

First, the Court must determine which statutory and regulatory authority governs this case.  Respondents imply that Petitioner's detention is governed by Section 1231(a)(1)(C) by

5

laying out that provision's mandates. [Dkt. 11 at 5].  In contrast, Petitioner argues that his detention is governed by Section 1231(a)(3) and its implementing provisions. [Dkt. 12 at 4-6].

Respondents have presented no evidence or legal argument that Petitioner "refuse[d] to make [a] timely application in good faith for travel or other documents necessary" for his departure, nor did they argue that Petitioner has "conspire[d] or act[ed] to prevent his removal." 8 U.S.C. § 1231(a)(1)(C).  Without any indication that Petitioner falls under Section 1231(a)(1)(C) and because Petitioner was released under an order of supervision, Section 1231(a)(3) and it's implementing regulations govern Petitioner's detention.  Specifically, 8 C.F.R. § 241.13 governs Petitioner's detention because Petitioner was re-detained after being released on an order of supervision and challenges the likelihood that he will be deported within a reasonable period of time. 8 C.F.R. § 241.13(a); see Kong, 62 F.4th at 619-20 (applying Section 241.13 where the petitioner alleged his deportation was not significantly likely in the reasonably foreseeable future); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. June 20, 2025) (same); Tran v. Hyde, 2025 WL 3724853, at *2 (same); Poeuv v. Smith, 169 F. Supp. 3d 297, 299-300 (D. Mass. 2016) (same).

To meet their burden under Section 241.13, Respondents must show (1) a change circumstance in Petitioner's case, and (2) that changed circumstance has resulted in a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Kong, 62 F.4th at 619-20. Respondents have not established either.

Petitioner's Notice of Revocation of Release does not explain any changes in Petitioner's immigration case. [Dkt. 1-1].  Nor do Respondents allege any change of circumstances in their submission to the Court. [See generally Dkt. 11].  Accordingly, Respondents have not met their burden under Section 241.13 and Petitioner's detention is unlawful.

Even if Respondents had alleged a change in circumstances, Respondents have not shown that Petitioner is significantly likely to be deported in the reasonably foreseeable future. Under 8 C.F.R. § 241.13(f), ICE must consider "all the facts of the case" when determining whether re-detention is supported by changed circumstances. These facts include, but are not limited to (a) the history of the noncitizen's "efforts to comply with the order of removal," (b) the history of ICE's efforts to remove noncitizens to the country in question or to third countries, (c) the ongoing nature of ICE's efforts to remove the noncitizen in question, and that individual's assistance with those efforts, (d) the reasonably foreseeable results of ICE's removal efforts, and (e) the views of the Department of State regarding the prospects for removal of noncitizens to the country in question. 8 C.F.R. § 241.13(f).

To start, there is no indication that ICE considered these factors prior to detaining Petitioner. In fact, Petitioner was not provided with a Notice of Revocation of Release until after he had been detained for three weeks. This failure to consider the factors prior to detention violates Section 241.13. See Huynh v. Wesling, 2026 WL 183467, at *3; Munagi, 2025 WL 3688023, at *2; Tran v. Hyde, 2025 WL 3724853, at *3.

The first and final factors provide little guidance. Respondents have not produced evidence regarding the Department of State's view on the prospects for removal of noncitizens to Vietnam. As to Petitioner's history of efforts to comply with his order of removal, Petitioner voluntarily and promptly complied with ICE's request to go to the field office. Additionally, Petitioner has twice attempted to obtain travel documents. But, because there is no evidence that ICE "actually commenced any effort to remove him at the time he was redetained, it is not clear how this factor could bear on the changed circumstances inquiry." Tran v. Hyde, 2025 WL 3724853, at *3.

7

Respondents argue that Petitioner's continued detention is necessary to obtain required documentation. Petitioner has complied with his order of supervision and ICE's requests in the past. In fact, Petitioner has attempted to receive travel documents of his own volition. As such, there is no apparent reason why Petitioner must be re-detained to assist ICE with its document request.

To the second enumerated factor, Respondents have provided no information regarding the history of ICE's efforts to remove noncitizens to Capo Verde. Accordingly, this factor weighs strongly in Petitioner's favor. As to the third enumerated factor, ICE Boston Field Office submitted a travel document request to ICE Removal and International Operations, which was returned as incomplete the same day it was submitted. Respondents claim that the ICE Boston Field Office is "working to collect additional information" but has provided no details regarding their actual efforts to obtain the tranche of required documents. Therefore, this factor also weighs in Petitioner's favor. See Nguyen v. Hyde, 788 F. Supp. 3d at 152 (granting habeas petition where Respondents had not identified "concrete steps ICE has taken to process Petitioner's particular travel document.").

As to the fourth enumerated factor, ICE already requested travel documents for Petitioner once and released Petitioner because the request was unsuccessful. Petitioner himself tried and failed to obtain travel documents from Cabo Verde. There is no indication that circumstances have changed since these two requests. As such, the reasonably foreseeable result of ICE's efforts to obtain Petitioner's travel documents is that they will be fruitless. As such, this factor also weighs against allowing continued detention.

In light of the factors enumerated in Section 241.13(f) and Respondents' failure to allege a change of circumstances, ICE is detaining Petitioner in violation of Section 1231. The Court

declines to address Petitioner's due process arguments because Petitioner's petition is granted on independently dispositive grounds.

### C. Remedy

When a noncitizen's detention is not in compliance with 8 U.S.C. § 1231 and its implementing regulations, the appropriate remedy is release from custody. See Tran v. Hyde, 2025 WL 3724853, at *4; Nguyen v. Hyde, 788 F. Supp. 3d at 152-53; Rombot v. Souza, 296 F. Supp. 3d 383, 389 (D. Mass. 2017).  Accordingly, the appropriate remedy in this case is release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Writ of Habeas Corpus [Dkt. 1] is **GRANTED**. Respondents are hereby **ORDERED** to release Petitioner pursuant to the order of supervision that was in effect prior to his re-detention.

**SO ORDERED.**

Dated: February 26, 2026                                /s/ Angel Kelley
                                                                                               Hon. Angel Kelley
                                                                                               United States District Judge